Ruth R. RADFORD

v.

MINNESOTA MINING & MANUFAC-
TURING COMPANY.

Civ. No. 2525.

United States District Court,
E. D. Tennessee, N. D.

Feb. 18, 1955.

Clyde W. Key, Wm. A. Reynolds, Knoxville, Tenn., for plaintiff.

H. H. McCampbell, Jr., Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This suit was filed in the Circuit Court of Knox County by the plaintiff as the widow of Condon Radford, who sues on behalf of herself and minor children for the alleged wrongful death of her husband that occurred on February 1, 1954 in Anderson County, Tennessee, as the result of the alleged negligence of defendant.

The deceased suffered severe burns as a result of the ignition and explosion of mastic cement, a product manufactured by the defendant, while he was installing a hardwood floor in a residence located at Oak Ridge.

The case was removed from the Circuit Court of Knox County to this Court on the grounds of diversity and jurisdictional amount in controversy.

Defendant has filed here a motion to dismiss the action or to quash the return of service of summons on the grounds: (a) That the defendant is a Delaware corporation and is not subject to service of process within the Eastern District of Tennessee, and (b) that the defendant was not properly served with process. The original service of process was served upon the Secretary of State in accordance with Vol. 3, Williams' Tenn.Code Ann., § 4124.

Following the hearing on defendant's motion an alias summons was issued at the request of plaintiff and served on Harold J. McKenna. The return of the Marshal shows that McKenna is an "automotive trades salesman" for the defendant.

█ If the defendant was not subject to process issued by the State Court, and not subject to service of alias process issued by this Court, plaintiff's action must be dismissed. Block v. Block, 7 Cir., 196 F.2d 930; Wilson v. Kansas City Southern Ry. Co., D.C., 101 F. Supp. 56.

Reasons urged in support of the motion to dismiss or quash are that defendant was not doing business in Tennessee at the time of the attempted service of the two summonses upon it, that it is not doing business in Tennessee at the present time, and that it was not and is not subject to suit in Tennessee. Also in support of its motion defendant has filed an affidavit of H. P. Buetow, its president. This affidavit states that defendant is a Delaware corporation with its principal place of business at St. Paul, Minnesota; that it has never been domesticated in Tennessee; that it does not do and has never done business in Tennessee; that it has never designated an agent for service of process upon it in the State of Tennessee; that it has not now and has never had an office for the conduct of its business in Tennessee; that it has never had property in Tennessee; that "the extent of its activities within the State of Tennessee is limited strictly and solely to the mere solicitation by its salesmen of orders for products of its manufacture, and that such orders are transmitted to its offices located outside the State of Tennessee."

Counsel for plaintiff concedes that if defendant's business was limited to the mere solicitation of orders by its salesmen for its products and such orders were transmitted to its offices outside the State of Tennessee and accepted by officers outside of the State of Tennessee it would not be subject to process in a civil suit in the State of Tennessee. This concession is in line with the principles declared in the cases of Green v. Chicago, Burlington & Quincy Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587 and the more recent decisions of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Travelers Health Ass'n v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154, and

Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485.

The oral testimony given by three of defendant's employees at the hearing shows clearly that defendant has carried on business activities in Tennessee continuously for a period of more than five years prior to the present suit and that such activities include much more than solicitation of orders for defendant's products.

Witness McKenna stated that he had been employed by defendant since 1951 as an automotive trade salesman dealing in sandpaper, masking tape, undercoatings and abrasives. He calls on the trade in an automobile owned and serviced by the defendant. Defendant's products are sold to distributors. He checks the distributors' stocks to see that they are complete. A distributor orders the merchandise direct from the defendant. McKenna deals principally with automobile repair shops and garages who have purchased defendant's products from the distributor. He instructs the garage owner in the proper use of defendant's products, reports to defendant any complaints for adjustments, investigates complaints, demonstrates the proper use of the products of defendant, and exhibits new products which are being introduced in the industry. McKenna lives in Knox County, Tennessee.

Witness Thomas L. Billman, another employee of defendant for more than four years, lives in Maryville, Tennessee. He represents defendant's Cellophane Tape Division. He calls on distributors who distribute defendant's products and makes sales to them. He services delinquent accounts upon instructions from the defendant. After he sells to one of defendant's distributors, he aids in every way possible the distribution and reselling of the product. He holds sales meetings for the jobbers. He uses an automobile that belongs to the defendant and that is worth around $2,000.

Witness Robert May has been in the employ of the defendant for about two years as an industrial salesman. He promotes around 343 different types of tape. He deals with from ten to fifteen distributors in his territory. He does not call on the trade but conducts sales meetings at the distributor's warehouses for the salesmen of the distributors. He handles complaints for adjustments. He stated that in a strict sense of the word he was not an order taker. This is his language: "I attempt to develop business, develop new applications, new methods of using my material in industrial plants in this area."

The question for decision is whether the foregoing activities are sufficient to make the defendant subject to personal process in the State of Tennessee. This question is controlled by the Tennessee Statutes and the decisions of the Appellate Courts of Tennessee, unless the business involved is interstate commerce, in which event the Federal decisions will control. Rosenthal v. Frankfort Distillers Corp., 5 Cir., 193 F.2d 137.

Section 8676 of the Code of Tennessee provides:

"Any corporation claiming existence under the laws of the United States or any other state, or of any country foreign to the United States, or any business trust found doing business in this state, shall be subject to suit here to the same extent that corporations of this State are by the laws thereof liable to be sued, so far as relates to any transaction had, in whole or in part, within this state, or any cause of action arising here, but not otherwise."

Section 8677 of the Code of Tennessee defines what is "doing business in this state" as follows:

"Any such corporation or trust having any transaction with persons, or having any transaction concerning any property situated in this state, through any agency whatever, acting for it within the state, shall be held to be doing business here within the meaning of section 8676."

Understanding of what constitutes doing business is clarified somewhat by observing what is excluded from the term. Section 4129.1 states that neither shall the ownership by any foreign corporation of goods, which may be stored or brought to rest in public warehouses owned, controlled or operated within the State of Tennessee by any individual or corporation qualified to do business in Tennessee, nor shall the delivery or distribution of such goods, in consummation of contracts of sale by a foreign corporation outside of Tennessee, or in any relation made to such goods be construed as doing business by such foreign corporation in Tennessee.

 While Section 4129.2 of the Code relieves the foreign corporation referred to in the preceding Section which confines its business within the limits of the foregoing Section, Section 4129.1, from qualifying to do business in Tennessee by filing its Charter in the office of the Secretary of State, or from paying the privilege tax or filing fee required to be paid by foreign corporations under Chapter 13 of the Public Acts of 1929, Extraordinary Session, it is not thereby contemplated that such corporation shall not be amenable to suit within the State.

"But any such foreign corporation shall be required to appoint and designate in writing an agent for the service of processs upon it in all actions or suits brought against it in the courts of this state: Said designation of the name and address of such agent shall be filed in the office of the secretary of state who shall be paid a fee of twenty dollars ($20.00) for the filing of same. And such foreign corporations shall be subject to process in all actions and suits against them as provided in said chapter 13 of said Extraordinary Session of 1929."

These sections of the Code show that it was the intention of the Tennessee Legislature to make all foreign corporations subject to process in civil suits that carry on business activities in the State in a substantial manner. To that end, the dividing line between what does and what does not constitute doing business is clearly drawn.

It is the opinion of the Court that the business activities of the defendant carried on within this State make the defendant, from the viewpoint of the State, subject to process in a civil suit. United Artists Corp. v. Board of Censors of City of Memphis, 189 Tenn. 397, 225 S.W.2d 550; Interstate Amusement Co. v. Albert, 128 Tenn. 417, 161 S.W. 488. From the federal viewpoint, the business carried on by defendant within the State of Tennessee supplied more than the minimum contacts therein required in maintenance of the suit, to satisfy notions of fair play and substantial justice. Scholnik v. National Airlines, Inc., 6 Cir., 219 F.2d 115.

Let an order be prepared overruling the motion.